[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife and the defendant husband intermarried on November 13, 1988, at Middlebury, Connecticut. Jurisdiction of this case is founded on the plaintiff's continuous residence in this state for at least a year prior to commencing this action for dissolution of the marriage described above. No child has been born to the plaintiff since the marriage date.
A pendente lite order was entered on June 8, 1992 (Barnett, J.), directing the defendant to pay $110.00 weekly alimony and as additional alimony, to pay the plaintiff's car loan payments as they fall due, as well as her car insurance, all of which was based on the parties' stipulated agreement filed with the court on that day. At that time, the defendant listed his occupation as "Paving Contractor", with an average net weekly wage of $800. on his unsigned financial affidavit filed the same day. CT Page 6505
The plaintiff was divorced from her second husband in August, 1988, from whom she received a $30,000. promissory note as part of their property settlement, as well as a 1987 Mazda 626 auto. The plaintiff has an associate's degree having completed a two year business administration course at Post College, Waterbury. She has worked as an office manager. She has managed a horse barn containing 45 horses. In 1988, she purchased a thoroughbred horse for $14,000. which she has continued to board, although it hasn't been shown in two years, the horse's leg having been reinjured last year. She now values it at $2,500. The plaintiff presently lives with Nadene Pabst, who keeps 4 horses. Part of the plaintiff's pay as manager is room and board furnished by Pabst. The plaintiff claims to owe $3,100. unpaid rent for last year. For the last 3 years, the plaintiff has been employed by Exterior Botanica of Newtown. Her financial affidavit lists her occupation as "garden assistant", testifying that the work is seasonal from April to November, and for this past winter, received $112. weekly unemployment insurance. The plaintiff was born on June 16, 1959. She testified to some health problems, all of which existed at the time of the marriage to the defendant.
The defendant moved to Florida after this case was brought. He did not return for trial, although his counsel filed a financial affidavit on which appears a State of Florida Notary Public ink stamp, next to which is written:
 "F1 Drivers License for identification Did not take an oath"
The "affidavit" does not comply with Section 463, Conn. Prac. Book, and the defendant has no sworn statement on file. The form claims to show that he is unemployed, receiving $306. weekly unemployment insurance. He lists a money market account for $25,000; a parcel of real estate in Largo, Florida with $20,000. equity, and a 1984 Buick Riviera auto valued at $3,500. The form also lists the plaintiff's auto loan of $4,000., miscellaneous debts of $11,800., credit cards of $5,700, and a cryptic "Potential Liability for Business Debts and Taxes" of $25,000.
The defendant had acquired a parcel of Middlebury real estate in November, 1983, known as Lot #3, which he transferred to his sister by quit claim deed in August 1991 (plaintiff's Exhibit A). On February 14, 1992, the defendant's sister quit claimed resubdivision Lot 3B to the defendant (plaintiff's Exhibit B). The latter lot defendant sold in December, 1992 to Fitzmaurice for CT Page 6506 $175,000. Earlier, in March 1992, the defendant's sister sold resubdivision Lot 3A to Ryan for $182,000. (plaintiff's Exhibit D). The defendant acquired Lot 3 for $72,100 in 1983, resubdivided it into Lot 3A and Lot 3B in 1986, all well before the defendant's marriage to the plaintiff. The defendant was born on January 20, 1950. There was no evidence concerning any health problems.
The plaintiff testified that the marriage was breaking down during 1991. The parties separated in January, 1992. During the marriage, the parties pooled their incomes to support their lifestyle. The defendant, a licensed pilot, bought and sold two light planes during the marriage, using RAC, Inc. to hold title. The consideration and financing was unexplained.
This marriage was a subsequent marriage for each party, was of less than 3 years duration, and financially neither party prospered nor suffered unequally. The plaintiff is possessed of vocational skills, formal education, employment experiences and the court concludes her employability is excellent. The court is unable to justify an order of periodic alimony as part of the final judgment. It is not the purpose of periodic alimony to subsidize the under utilization of proven employment skills nor to encourage a reluctance to exercise them.
Counsel agreed that the defendant paid the pendente alimony order through 1992, and that as of the date of trial, May 20, 1993, there was an arrearage of $2,090. The defendant maintained the health insurance coverage through April 15, 1993, after which neither party paid any premium.
Having considered the evidence in light of the statutory criteria, the court enters the following judgment:
1. A decree is entered on the plaintiff's complaint dissolving the marriage on the ground of irretrievable breakdown. The cross complaint is dismissed as moot.
2. The parties shall each keep the assets each now owns and shall each keep the liabilities each now owes.
3. The defendant shall pay the accumulated pendente alimony arrears at the rate of $100. weekly. The arrears shall earn statutory interest as a judgment debt until paid in full. CT Page 6507
4. The defendant shall pay to the plaintiff, as lump sum alimony, $8,000., due on or before August 1, 1993, from which sum the plaintiff will be able to pay the car loan balance of $1,100., her legal expenses of $3,000. as an allowance to prosecute, $3,100., her rent arrears, and $800. that can be applied to a new medical insurance application if she chooses to do so.
5. The plaintiff's motion for contempt dated April 8, 1993 is denied, its issues having been disposed of in this decision.
Counsel for the plaintiff is directed to prepare the judgment file. Counsel for the defendant is directed not to press his motion to withdraw until the judgment is signed pursuant to Section 338, Practice Book.
Harrigan, J.
HARRIGAN